Gueen, L,
delivered t.he opinion of the. court.
This is an action brought by the corporation of Nashville to recover the sum paid by the plaintiffs for constructing a foot pavement on the side of the street fronting the defendant’s lot in said town. A verdict and judgment were rendered against the defendant in the circuit court, from which he prosecutes this appeal in error to this court.
By an act of the Legislature, amendatory of the act incorporating the inhabitants of Nashville, passed 20th of February, 1836, it is provided in section 10th : “That the Mayor and Aldermen of the town of Nashville, shall have power to regulate foot pavements and side-walks in the streets of said town; and if the owner or owners of lots shall fail to comply with the provisions of such by-laws, within such time as may be prescribed thereby, the corporation may contract with some suitable person or persons, on the best terms that can be made, for the construction of such side-walks or pavements, and pay for the same, and the amount paid by the corporation shall constitute a charge against the owner or owners of the lots, to be recovered against them by suit,” &c.
The corporation passed an act to regulate foot pavements and side-walks, &c.
In the first section of this law, it is provided, that at the first regular meeting of the Mayor and Aldermen in each year, the Mayor shall appoint a standing committee, to be known as the street committee, consisting of six Aldermen, to keep a supervision of the streets — superintend the grading —see that the foot pavements and side-walks are properly constructed — and generally to see the provisions of the law enforced.
Section second provides, that owners of lots shall “cause good and substantial foot pavements, to be made of brick or *179 suitable stone, in front of all such lots* — said pavements to be protected by curbing,” &c.
Section third enacts, “That if the owner or owners of lots, or their agents, or any of them, shall fail to comply with the provision's of this act, after thirty days’ notice, it shall be the duty of the chairman of the street committee for the time being, and he is hereby authorized to contract with some suitable person for the construction of such side-walks or pavements, and cause the same to be made and paid for by the •corporation; and the amount so paid shall constitute a charge •against the owners of said lot or lots, as aforesaid, to be recovered against them by suit,” &c.
It appears from the record, that on the 28th of November, 1848, the following notice was served on the defendant.
Nashville, Tennessee — Corporation of Nashville.
“Me. Thos. Washington Take notice, that on or before the 15th of December, 1848, you are hereby required to have made in front of that part of lot No. 61, fronting on Cherry street, owned by Thos. Washington, a good and substantial foot pavement, said pavement to be made of brick or suitable stone, to be nine feet wide, to be protected by a substantial curbing of stone or cedar, and to be constructed under the direction of the chairman of the street committee, for the time being; otherwise said pavement will be made as allowed by the laws of the corporation, and the amount paid therefor charged against the owner of said lot.
“By order of the Board of Mayor and Aldermen of the city of Nashville.”
“S. Y. D. Stout,
“ Chairman of Street Committee.”
The defendant failed to make the pavement required, and in April 1850, a pavement was constructed, under the direction of the chairman of the street committee, which cost $107 00, to recover which, this suit is brought.
*180 1st. It is now insisted that the act of the Legislature giving the corporation authority to make the by-law under which this proceeding is had, is unconstitutional, and of no force and validity.
This question has heretofore been before the court, in the case of Mayberry vs. The Corporation of the Town of Franklin, 6 Humph. Rep. 368, and it was held in that case, to be within the legislative competency to enact such law.
We have heard nothing advanced to shake our confidence in the correctness of the judgment in that case.
To require the owners of town lots to construct pavements along their side-walks, is not the exercise of the taxing power, nor is it the taking private property for public use. Upon these two subjects there are express provisions in the constitution restraining the exercise of legislative discretion. But the provision in question, requires the owners of property in the city, to contribute their labor towards the construction of pavements for the common good of the community where their property is situated, whereby the general interest is promoted, and the property thus owned is greatly enhanced in value.
It is the exercise of precisely the same description of power, that is employed in requiring the inhabitants of a county to labor in the opening, and keeping in repair, the public roads.
This is not denied — but the argument questions the exercise by the Legislature of such power, and demands a principle to be stated, upon which it can rest for support.
It would be sufficient to reply, that the constitution contains no prohibition of the exercise of such power, and that, as the Legislature is as omnipotent as the British Parliament, except where there is a negative in the constitution on its powers, express or implied, it follows, that the power may be *181 exercised, unless its exercise is so unjust and oppressive, as for that reason, to be of no force.
And counsel puts the argument to negative the existence of this power, on the ground, that it is unequal, and therefore unjust and oppressive.
It is certainly true, that perfect equality is not attained by the operation of this law — but it may be said with equal truth that such equality of public burdens cannot be attained by any device that the wit of man has ever yet suggested.
If a fund be raised by taxation, for constructing roads in the county, or streets and side-walks in the town, it is certain that equality of burdens in proportion to the benefits enjoyed will not be attained.
Take our mode of taxation, for an example. A merchant may have a large stock of goods, and may own no lots in town. You raise a tax to improve the streets and side-walks. The merchants will pay the larger share of the taxes, but the owners of the lots will reap the advantage, almost exclusively, in the appreciation of the value of their estates. Here would be a gross inequality. It would be taking the money out of the pockets of one class of citizens, with which to improve the property of another class.
It is true, there will not be exact equality of burdens, among the owners of lots, if each is compelled to construct a side-pavement in front of his lot. And this consideration constituted a strong ground, in Mayberry’s case, for insisting that the law was oppressive. But in the case before us, no such inequality exists, against the defendant. His lot is of great value, and if the owners of real estate in the city were taxed to make these improvements, the defendant would doubtless be compelled to pay in such taxes, a greater sum than the pavement of his side-walks have cost.
Perhaps it might be otherwise, if merchants in the city were taxed, in the proportion they pay into the State Treasnry. *182 But we have seen how unequal and oppressive on them such a tax would be.
This law is general — it operates alike on all, and is not, in our opinion, so unequal, as for that reason, to be of no force.
The principle upon which this power of legislation is exercised, is that plain and universal one, indispensable in the administration of government, that the public have a right to the contributions of the money, and personal service of all its citizens, whenever the public interests, and exigencies may demand it, in consideration of the protection it affords, to life, liberty, reputation and property.
Those benefits conferred by government, entitles it, as a matter of principle, as well as from the necessity of the case, to any service its exigencies may demand, and t.o the employment of the property of the citizens in any way that may be necessary for the public good, and which is not forbidden in the constitution.
It is upon this principle, a militia man is compelled to serve in the army, or to patrol in his neighborhood. But these services are not resisted on the ground that every other man does not perform equal service. Nor upon the ground that the party has no friends, or property to protect, while others who have not been called on, and may not be needed, have thousands of property, and numerous families.
Indeed, we can scarcely find, in the exercise of the sovereign authority, any subject in relation to which public burdens are imposed, in which there is very much nearer approach to equality, than exists in the operation of the law in question. We therefore think it is constitutional, and conferred on the corporation, power to make the by-law in question.
2d. In the next place, we rire to inquire, whether the proceedings in this case have been in conformity to the law, so *183 as to render the defendant liable to this action. And we think they have not. The third section of the corporation law, provides that if the owners of lots shall fail to comply with the requisitions of the law, after thirty days’ notice, it shall be the duty of the chairman of the street committee, to contract for the work, and cause it to be paid for by the corporation, and the amount is to be charged to, and recovered from the owner of the lot.
By this law, the liability of the owner of a lot, for noncompliance with the second section, does not accrue, until he shall have had notice, as required by the third section of the law. The action accrues, by reason of his failure to comply with the notice. Now, what was the notice in this case?
On the 28th of November, 1848, the defendant was notified that he must have this pavement made by the 15th of December thereafter, otherwise, said pavement will be made as allowed by the laws of the corporation, &c.
Now, had the defendant been ever so much inclined to ful-fil all his duties as a citizen, he would have seen that the officer of the corporation had exceeded his authority, and had required him to do that, which the law did not demand, and, therefore, that the requisition was void.
It is no answer to say, that in point of fact, the corporation did not make this pavement until more than thirty days had elapsed, after this notice was given. Nor is it any answer to say, that a notice to make the pavement, without the specification of any time within which it was to be completed, would have been good. For here, the party was required to have this pavement made in seventeen days, when the law gave him thirty; and he was told, if he did not make it in the seventeen days, he would be liable to an action for the amount it might cost the corporation to make it. It is clear, he was not bound to make it in seventeen days. And as he was told, if he did not do so, the corporation would make it, he *184 might safely permit them to go on and accomplish the work at their own expense. And when they failed to do this, and took no steps to construct this work until the spring of 1850, he had a right to believe they had discovered the illegality of the notice, and had abandoned the proceeding, as founded upon it. We think this notice, not being in compliance with the third section of the law, was wholly illegal and void; that it created no obligation on the defendant to comply with its terms, and in disregarding its requirements, he incurred no penalty.
We are aware that it is indispensable for the prosperity of our cities and towns, that the by-laws enacted for the improvement of the streets, and for the preservation of order, should be enforced, with a steady and firm hand, so that the refractory may not be permitted to thwart the beneficent objects of the law; but on the other hand, the exaction, by the coercion of the law, from a citizen, of his property, or his personal labor, for the public service, is the highest and most delicate exercise of power, and should never be permitted, unless the proceeding by which it is attempted to be done, is in strict conformity to law, and clearly within the competency of government.
Reverse the judgment and award a new trial.